IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

MARJORIE DIAZ,                    *
                                  *
        Plaintiff,                *
                                  *
        v.                        *        CV 622-080
                                  *
TIMOTHY C. WARD, et al.,          *
                                  *
        Defendants.               *

--------------------------

**O R D E R**

--------------------------

Presently pending before the Court is Defendants' renewed
motion to dismiss.   (Doc. 29.)   For the following reasons,
Defendants' motion is **GRANTED**.


## I. BACKGROUND

Plaintiff filed her Complaint on February 18, 2022 pursuant
to 42 U.S.C. § 1983, alleging one claim against all Defendants:
violation of the Eighth and Fourteenth Amendments of the United
States Constitution.   (Doc. 1, at 15-17.)   Plaintiff is the widow
of Adrian White ("Mr. White") and seeks both survival and wrongful
death damages under federal and state law.   (Id. at 3.)   Defendant
Ward is the Commissioner of the Georgia Department of Corrections
("GDOC"), Defendant Bobbitt is the Warden of the Georgia State
Prison ("GSP"), and Defendant Jackson is the Deputy Warden of
Security at GSP.   (Id.)   Defendants John Does 1-10 are correctional

employees that were employed at GSP or the GDOC and were responsible for placing Mr. White in the same cell as Shawn Mosely ("Mr. Mosely"). (Id. at 3-4.)

During the relevant times, Mr. White was under the supervision of the GDOC at GSP. (Id. at 1.) Mr. White was cell mates with Mr. Mosely, who was a dangerous and mentally disturbed felon and had a history, while incarcerated, of drug abuse, carrying homemade weapons, and stabbing other inmates. (Id. at 2.) On December 3, 2019, Mr. Mosely stabbed and killed Mr. White with a homemade weapon. (Id.) Plaintiff alleges "Mr. White's murder is the direct consequence of deliberate indifference on the part of [GDOC] personnel ranging from the [GDOC] Commissioner to the correctional officers in the pod in which Mr. White was killed." (Id.) Mr. Mosely was criminally prosecuted for the murder and was convicted on February 18, 2022. (Id.) Plaintiff alleges the GDOC Commissioner, Defendant Ward, was on notice that understaffing, poor supervision, and inadequate mental health care for inmates caused a surge in inmate-on-inmate violence. (Id.) Prior to Mr. White's murder, numerous reports and investigations suggested reform was needed in the GDOC to reduce inmate violence; however, no steps were taken. (Id. at 2-3.) Plaintiff asserts a lack of training and supervision, failure to make timely security rounds and call checks, failure to properly search Mr. Mosely, and an

institutional indifference to the risks of placing violent inmates in shared cells caused Mr. White's death. (Id. at 3.)

Plaintiff rehashes a history of infractions Mr. Mosely received while in the GDOC. (Id. at 5-7.) She alleges that based on his history, Defendants were aware of Mr. Mosely's propensity toward violence against other inmates, his ability to procure prohibited weapons, and much more. (Id. at 7.) As such, Plaintiff believes Defendants clearly knew Mr. Mosely posed a risk to the safety of Mr. White and other inmates. (Id. at 8.) She points out that nine months before the relevant incident, Mr. Mosely stabbed a different cellmate in the face, head, and neck. (Id.)

Plaintiff's claim makes numerous allegations regarding Defendants. First, she alleges Defendants were aware Mr. Mosely had a history of mental instability and assaulting other inmates but disregarded this known risk by placing Mr. White in a cell with him. (Id. at 15.) Next, she alleges Defendants' decision to put Mr. White and Mr. Mosely in the same cell was in direct contravention of prison policy which required Mr. Mosely be in segregation; thus, Defendants knowingly and willfully placed Mr. White in imminent danger of bodily harm and death. (Id.) Next, Plaintiff alleges Defendants had a duty to ensure correctional officers routinely inspected cells of inmates with violent histories like Mr. Mosely, and Defendants failed to train, equip, and direct the staff to perform this duty, allowing Mr. Mosely to

3

Case 6:22-cv-00080-JRH-BKE   Document 37   Filed 09/27/23   Page 4 of 25

hide the weapon he used to kill Mr. White. (Id. at 15-16.) Plaintiff further alleges Defendants' policies, practices, acts, and omissions constituted deliberate indifference to a serious risk of harm to Mr. White and constitute clearly established violations of the Cruel and Unusual Punishment Clauses of the Eighth Amendment. (Id. at 16.) She alleges that as a proximate result of Defendants' illegal and unconstitutional acts and omissions, Mr. White was left unprotected and murdered. (Id.) Furthermore, she alleges Defendants acted with a deliberate indifference to the safety of Mr. White, resulting in Mr. White being incarcerated under conditions posing a substantial risk of serious harm. (Id. at 17.) Plaintiff claims these actions were deliberate and in reckless disregard of Mr. White's constitutional rights, warranting an award of punitive damages. (Id.) And finally, Plaintiff claims Defendants' policies, practices, acts, and omissions created the conditions in which Mr. White's murder was foreseeable; thus, she is entitled to an award in the amount of the full value of Mr. White's life. (Id.)

Defendants filed a renewed motion to dismiss Plaintiff's Complaint on February 15, 2023, moving to dismiss for failure to state a claim and qualified immunity. (Doc. 29.) Plaintiff responded in opposition (Doc. 32-1), and Defendants replied in support (Doc. 36). As such, the motion has been fully briefed and is ripe for the Court's review.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v.

Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993)
(citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th
Cir. 1991)).


### III. DISCUSSION

Defendants move to dismiss Plaintiff's Complaint for failure
to state a claim and based on qualified immunity.  (Doc. 29, at
1.)  Specifically, they argue the Complaint fails to state a § 1983
claim because there are no plausible factual allegations of
Defendants' subjective awareness of a known and particularized
risk to Mr. White or disregard of such risk.  (Doc. 29-1, at 8.)
Furthermore, Defendants argue any supervisory liability claim
fails because there was no personal participation of the named
supervisors, no allegations they ordered any subordinate to
disregard any specific risk of imminent assault posed to Mr. White,
and no policy or history of widespread abuse sufficient to satisfy
the supervisory liability requirements.  (Id. at 14-16.)  Finally,
Defendants argue qualified immunity bars Plaintiff's § 1983 claim
because Defendants acted within the scope of their discretionary
authority, and since Plaintiff cannot show Defendants violated
Plaintiff's Eighth or Fourteenth Amendment rights under a direct
or supervisory liability theory, they are entitled to qualified
immunity.  (Id. at 16-17.)  The Court addresses Defendants'
arguments in turn.

## A. Fictitious Party Pleading

Preliminarily, the Court addresses John Does 1-10. "As a general matter, fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010); see also Fitzpatrick v. Ga. Dep't of Corr., No. CV 612-022, 2012 WL 5207474, at *8 (S.D. Ga. Sept. 12, 2012), R. & R. adopted as modified, No. CV 612-022, 2012 WL 5207472 (S.D. Ga. Oct. 22, 2012). A limited exception to this rule exists "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage,'" and thus discovery would uncover the unnamed defendant's identity. Richardson, 598 F.3d at 738 (quoting Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992)); Daleo v. Polk Cnty. Sheriff, No. 8:11-CV-2521, 2012 WL 1805501, at *4-5 (M.D. Fla. May 17, 2012)).

Plaintiff alleges John Doe 1-10 were, at the relevant times, employed at GSP or the GDOC and were responsible for placing Mr. White in the cell with Mr. Mosely. (Doc. 1, at 3-4.) She alleges their true names are unknown; however, she will seek leave to amend the Complaint to show the true names and capacities when they are ascertained. (Id. at 4.) Later in the Complaint, Plaintiff alleges John Doe 1-10 were employees of GDOC and were responsible for making cell assignment and ensuring inmates' security levels were properly assessed. (Id. at 14.) Plaintiff provides no other

allegations or descriptions as to who these fictitious Defendants might be.

Bare descriptions and conclusory allegations "do[] not equate to the real possibility that these unknown individuals' identities will be revealed" during discovery, and the Court will not enable a fishing expedition on account of Plaintiff's use of placeholders. See Fitzpatrick, 2012 WL 5207474, at *8.  Other than alleging John Doe 1-10 worked at either GSP or the GDOC, were responsible for room assignments, and failed to keep Mr. White safe by conducting room checks, Plaintiff fails to provide an adequate description of these fictitious parties.   (See Doc. 1, at 3-4, 10, 14.) Plaintiff's description is "insufficient to identify the defendant among the many [officers] employed at the [correctional institute]." Williams v. Phenelli, No. 419-CV-353, 2022 WL 891843, at *3 (S.D. Ga. Mar. 25, 2022) (quoting Richardson, 598 F.3d at 738).  Therefore, the Court sua sponte **DISMISSES** Plaintiff's claims against John Doe 1-10.  See Richardson, 598 F.3d at 738 (finding district court did not err by dismissing John Doe defendants sua sponte when complaint only described them as guards at the correctional institute).

## B. Failure to State a Claim – Direct Liability

The Court now turns to the merits of Defendants' motion. Defendants first move to dismiss for failure to state a § 1983 claim.  (Id. at 6-14.)  In response, Plaintiff asserts she pled

with specificity facts sufficient to support an Eighth Amendment claim for deliberate indifference.[1]  (Doc. 32-1, at 3.)

## 1. Legal Standard

Deliberate indifference requires "(1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence." Dang ex rel. Dang v. Sheriff, Seminole Cnty., 871 F.3d 1272, 1280 (11th Cir. 2017). Subjective knowledge demands that "the defendant 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099-1100 (11th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  Furthermore, "[a] prison official must also have a sufficiently culpable state of mind to be deliberately indifferent." Murphy v. Turpin, 159 F. App'x 945, 948 (11th Cir. 2005) (citation omitted).  Thus, there is a subjective and objective component.  Caldwell, 748 F.3d at 1099.  For the subjective component, plaintiff must provide allegations "that the defendant actually (subjectively) knew that an inmate faced a substantial risk of serious harm." Id. (citations omitted and

---

[1]As Defendants correctly argue, "[t]he Eighth Amendment, not the Fourteenth, governs because [Mr.] White was a convict in custody at the time of the events in issue." (Doc. 29-1, at 5 n.3 (quoting Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996)).)  In Plaintiff's response to the motion to dismiss she never mentions the Fourteenth Amendment; thus, the Court considers that claim abandoned and analyzes her claim under the Eighth Amendment.

alterations adopted). For the objective component, plaintiff must provide allegations "that the defendant disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." Id. (citations omitted and alterations adopted). "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 1102 (citation omitted).

"Prison officials have an obligation to protect prisoners from violence inflicted upon them by other prisoners." Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014). "Not 'every injury suffered by one inmate at the hands of another,' however, 'translates into a constitutional liability for prison officials responsible for the victim's safety.'" Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam)). "[M]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." Carter, 352 F.3d at 1350 (citation omitted).

2. Analysis

Defendants argue there are no allegations of a specific known and imminent threat to Mr. White's safety. (Doc. 29-1, at 8.) In response, Plaintiff alleges that based on Mr. Mosely's violent

history, which at least Defendants Jackson and Bobbitt were specifically aware of, Defendants should have acted in an effort to protect all prisoners from sharing space with Mr. Mosely. (Doc. 32-1, at 4-5.) Plaintiff sufficiently pled allegations Mr. Mosely was dangerous; however, the issue before the Court is whether Plaintiff sufficiently pled allegations that Defendants are liable for failing to protect Mr. White from Mr. Mosely based on his GDOC history. To satisfy the elements of a deliberate indifference claim, "Defendants must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind." Carter, 352 F.3d at 1349 (internal quotations and citations omitted). Defendants argue Plaintiff failed to plead allegations sufficient to satisfy this element because "there is no allegation that any of these three [D]efendants knew that an assault was occurring, or even a plausible allegation that they knew an attack against [Mr.] White was imminent." (Doc. 29-1, at 9.) In response, Plaintiff argues deliberate indifference does not require the prison official have knowledge of a specific threat; instead, the inquiry should be whether Mr. White was *exposed* to a substantial risk of serious harm, not whether he was at *imminent* risk of serious injury. (Doc. 32-1, at 8-9 (emphasis in original and citation omitted).)

Plaintiffs rely on Caldwell for their argument, and while Caldwell does explain that Plaintiff need not allege Defendants

*believed* harm would actually befall Mr. White, she still must show Defendants "failed to act despite [their] knowledge of a substantial risk of serious harm." Caldwell, 748 F.3d at 1102 (citation omitted).  Looking at this interpretation in line with the rest of the Caldwell opinion, Plaintiff must allege Defendants "actually (subjectively) knew that [Mr. White] faced a substantial risk of serious harm," and they "disregarded the known risk by failing to respond in an (objectively) reasonable manner." Id. at 1099 (citations omitted and alterations adopted).  The Court finds Plaintiff failed to sufficiently allege these elements.

Accepting Plaintiff's allegations as true, the conduct at issue does not rise to the level required for a constitutional claim.  The allegations in this case are different than Caldwell because there are no allegations Defendants were subjectively aware Mr. White faced a substantial risk of serious harm.  Even assuming Defendants all knew Mr. Mosely was a dangerous inmate, such generalized awareness of his risk does not meet the obligations of pleading the subjective awareness requirement. See Carter, 352 F.3d at 1350 ("Defendants only possessed an awareness of [the inmate's] propensity for being a problematic inmate; to find Defendants sufficiently culpable would unduly reduce awareness to a mere objective standard, rather than the required subjective standard set by the Supreme Court.  Such a generalized awareness of risk in these circumstances does not satisfy the

subjective awareness requirement.")   In <u>Caldwell</u>, the plaintiff told the prison officials he was in fear of his life and requested to not return to the same cell, but the officers ignored his requests.   748 F.3d at 1094.   There are no allegations in the Complaint that Mr. White ever vocalized any concerns with Mr. Mosely.   It would be a conclusory jump to assume that because an inmate had a long history of getting caught with contraband and a few instances of violent attacks over the span of ten years, that his cell mate was at risk of a serious harm, and that Defendants needed to intervene.   (See Doc. 1, at 5-7.)   As the Eleventh Circuit explained in <u>Goodman</u>, a plaintiff cannot simply allege "Well, they should have known" as a basis for a deliberate indifference claim.   718 F.3d at 1334.   Because Plaintiff failed to allege the requisite subjective awareness, she has failed to state a § 1983 claim as to the direct liability of the Defendants.

## C. Failure to State a Claim – Supervisory Liability[2]

Defendants also move to dismiss Plaintiff's § 1983 claim against the named supervisory Defendants for failure to state a claim.   According to the Complaint, Defendants Ward, Bobbitt, and Jackson (hereinafter the "Supervisor Defendants") are in supervisory positions with the GDOC and at GSP.   (Doc. 1, at 3-

---

[2] The Court notes that it is unclear from the face of Plaintiff's Complaint, as well as her response to the motion to dismiss, whether she is asserting her § 1983 claim on the basis of direct or supervisory liability.   Thus, out of an abundance of caution, the Court addresses Defendants' arguments for both.

4.)  Plaintiff did not respond to Defendants' supervisory liability arguments; nonetheless, the Court addresses their legal basis.

1. Legal Standard

Typically, "supervisory officials are not [] liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and internal quotation marks omitted); accord Stallworth v. Wilkins, 802 F. App'x 435 (11th Cir. 2020).  To impose supervisory liability for § 1983 violations, a plaintiff must show either (1) "the supervisor personally participate[d] in the alleged unconstitutional conduct" or (2) "there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010).

To establish a causal connection, Plaintiff must show either: (1) "a history of widespread abuse put[] the responsible supervisor on notice of the need to correct the alleged [constitutional] deprivation, and he fail[ed] to do so," (2) "a supervisor's custom or policy result[ed] in deliberate indifference to constitutional rights," or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from

14

doing so." Id. (internal quotation marks omitted) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234-35 (11th Cir. 2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360-61 (quoting Gonzalez, 325 F.3d at 1234) (alterations in original). "[A] supervisor is not liable under § 1983 for mere negligence in the training or supervision of his employees." Balbin v. Latin, No. 22-cv-20332, 2022 WL 426508, at *5 (S.D. Fla. Feb. 11, 2022) (quoting Greason v. Kemp, 891 F.2d 829, 836-37 (11th Cir. 1990)).

2. Analysis

As to the Supervisor Defendants, Plaintiff alleges the following: Defendants Ward and Bobbitt were on notice prior to Mr. White's death that understaffing, poor training, and general neglect had created an increase of inmate-on-inmate violence in the GDOC and they were in positions to remedy these problems but failed to do so; Defendant Ward was responsible for supervision of operations at GDOC facilities, including GSP, knew about the inadequate mental health care provided to inmates, and took no steps to remedy the problem; Defendant Ward knew about the

15

procedures that required GSP officers to timely check on inmates with histories of violence to ensure safety and is responsible for the failure of GDOC employees who failed to ensure the safety of inmates in close confinement with high risk inmates; Defendant Bobbitt was aware GSP officers were required to keep inmates safe and was responsible for ensuring officers adhered to the standards meant to ensure GSP inmate safety; Defendant Bobbitt was on notice of particularly dangerous offenders housed at GSP; Defendant Bobbitt knew Mr. Mosely had a history of contraband, narcotics, assault, and mental health problems and took no steps to remedy the problem of inadequate mental health care at GSP; Defendant Jackson shared responsibility of operations at GSP and knew Mr. Mosely was dangerous, had a history of stabbing inmates, and had mental health problems; Defendant Jackson was responsible for ensuring officers under her maintained inmate safety, including ensuring they completed routine and timely checks on inmates; Defendant Jackson's failure to ensure safety procedures were followed demonstrates her deliberate indifference to a known danger to Mr. White and created a dangerous situation that directly allowed Mr. Mosely to stab and kill Mr. White. (Doc. 1, at 12-14.)

Furthermore, Plaintiff alleges the Supervisor Defendants knew that GSP was understaffed, prison staff failed to take basic steps to ensure inmate safety, inmates with mental health problems were

kept in conditions that worsened their propensity for violence, and inmate on inmate violence was increasing as a result. (Id. at 16.)  Based on this, and the Court's findings above, there are no allegations these supervisors directly participated in the alleged deliberate indifference to Mr. White.  In fact, Plaintiff alleges John Doe 1-10 were responsible for the cell assignments and placed Mr. White in the cell with Mr. Mosely.  (Id. at 14-15.)  As such, the Court turns to whether Plaintiff alleged a sufficient causal connection to hold the supervisors responsible for the actions of their subordinates.   It  appears  Plaintiff  attempts  to  allege liability based on failure to train and failure to supervise. (Id. at 3.)

First,  there  seems  to  be  an  implication  the  Supervisor Defendants should be held liable because they are responsible for employees who failed to protect Mr. White.  (See id. ¶¶ 43, 44, 47.)  However, as outlined above, "supervisory officials are not [] liable under § 1983 for the unconstitutional acts of their subordinates  on  the  basis  of  respondeat  superior  or  vicarious liability." Hartley, 193 F.3d at 1269.  As such, this basis of liability fails.  Next, there are no allegations the Supervisor Defendants  personally  participated  in  the  alleged  failure  to protect Mr. White.  Thus, the Court turns to whether Plaintiff sufficiently alleged a causal connection between the actions of

the Supervising Defendants and the alleged constitutional deprivation." See Cottone, 326 F.3d at 1360.

To establish a causal connection, Plaintiff must allege (1) "a history of widespread abuse put[] the responsible supervisor on notice of the need to correct the alleged [constitutional] deprivation, and he fail[ed] to do so," (2) "a supervisor's custom or policy result[ed] in deliberate indifference to constitutional rights," or (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Id. (citations and quotations omitted). There are no allegations the Supervisor Defendants directed their subordinates to act unlawfully, so the Court finds Plaintiff is alleging supervisory liability based on a history of widespread abuse or a custom or policy.

First, Plaintiff goes through a history of violence and inadequate mental care at GDOC prisons. (Doc. 1, at 10-13.) However, she references reports and investigations documenting inadequate mental health treatment, staffing, and training and generalized neglect throughout the GDOC, leading to an upsurge in inmate violence. (Id. at 11-12 (emphasis added).) There are no allegations linking the history of problems at the GDOC to the Supervisor Defendants or to Mr. White's incident aside from Plaintiff's conclusion that the problems are evidence of

18

deliberate indifference on the part of GDOC officials and GSP leadership as to inmate safety. (Id. at 11.)  "In general, a plaintiff must show more than a generalized awareness of risk to make out a deliberate-indifference claim." Balbin, 2022 WL 426508, at *6 (citing Marbury, 936 F.3d at 1234).  Furthermore, Plaintiff herself refers to the history of problems as "neglect" (Doc. 1, at 11-12), and a supervisor cannot be liable for mere negligence in the training or supervision of his employees.  See id. at *5 (citation omitted).  "To establish deliberate indifference based on a generalized risk, the plaintiff must show that serious inmate-on-inmate violence was the norm or something close to it." Id. at *6 (citing Marbury, 936 F.3d at 1234; Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1583 (11th Cir. 1995)).  Plaintiff makes no allegations of such norms at GSP in direct relation to Mr. White's incident. She only makes allegations about the GDOC as a whole which is too generalized of a jump to state a claim against the Supervisor Defendants based on a history of widespread abuse.

Next, the Court turns to whether Plaintiff established a causal connection by alleging a custom or policy of the Supervisor Defendants resulted in deliberate indifference to Mr. White's constitutional rights.  Plaintiff alleges "Defendants' policies, practices, acts, and omissions constituted deliberate indifference to a serious risk of harm to Mr. White" and "Defendants' deliberate policies, practices, acts, and omissions created the conditions in

which Mr. White's murder was foreseeable." (Doc. 1, at 16-17.) However, "to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents . . . or multiple reports of prior misconduct by a particular employee." Piazza v. Jefferson Cnty., 923 F.3d 947, 957 (11th Cir. 2019) (internal citations omitted). "The administration of a prison, the Supreme Court has said, is at best an extraordinary difficult undertaking." Mosley v. Zachery, 966 F.3d 1265, 1273 (quoting Hudson v. Palmer, 468 U.S. 517, 527 (1984)) (internal quotation marks omitted). Because of this difficulty, "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. (quoting Bell v. Wolfish, 411 U.S. 520, 547 (1979)) (quotation marks omitted and alterations adopted).

Plaintiff makes numerous allegations about how she believes, pursuant to her interpretation of GDOC policies, Mr. Mosely should have been in Tier II or III segregation and checked on more regularly because of his history. (Doc. 1, at 8-9.) Based on this, she argues Defendants violated the GDOC policy and should be held liable. (Id. at 9-10.) However, regardless of what policy Plaintiff believes should have been followed, these allegations are insufficient to state a claim that the Supervisor Defendants

had their own "custom or policy" that resulted in a violation of Mr. White's constitutional rights.  "[T]o prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct of a particular employee." Benton v. Walker Cnty., No. 6:17-CV-384, 2020 WL 1433149, at *13 (N.D. Ala. Mar. 24, 2020) (citing Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991); Danley v. Allen, 540 F.3d 1298, 1315 (11th Cir. 2008)).  Plaintiff alleges no custom or policy of the Supervising Defendants that led to Mr. White's alleged constitutional violation, she simply relies on what she considers a "violation of GDOC policy" to try and attach liability. This approach does not create a causal connection to the Supervisor Defendants.  Based on the foregoing, Plaintiff failed to allege a causal connection between the Supervisor Defendants; thus, she has failed to state a claim for supervisory liability.

## D. Qualified Immunity

Finally, Defendants move to dismiss based on qualified immunity, arguing they were acting within their discretionary authority and they did not violate Mr. White's constitutional rights under a direct or supervisory liability theory.  (Doc. 29-1, at 16-17.)  In response, Plaintiff argues this argument is premature, as she has not yet conducted discovery.  (Doc. 32-1, at 9-10.)  Furthermore, she argues it was clearly established in December 2019, when the murder occurred, that prison officials are

deliberately indifferent to a substantial risk of serious harm when they have actual knowledge of an inmate's violent tendencies and nonetheless assign that inmate to a cellmate. (Id. at 11.) Although the Court already determined Plaintiff failed to state a direct or supervisory liability claim against the Defendants, it addresses qualified immunity out of an abundance of caution.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)) (alterations and internal quotation marks omitted). "Qualified immunity from suit is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation and internal quotation marks omitted). In other words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Robinson v. Payton, 791 F.3d 824, 829 (8th Cir. 2015) (citing Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." Gonzalez, 325 F.3d at 1234 (citing Vinyard, 311 F.3d at 1346).  To determine whether a government official was acting within the scope of his discretionary authority, courts consider whether the official "(a) perform[ed] a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."   Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).   The Supervisor Defendants assert they acted in their capacities as GDOC and GSP officials during all relevant times, and there are no allegations they acted outside of those duties.  (Doc. 29-1, at 17.)  As such, the Court finds they were acting within the scope of their discretionary authority.

"Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003)).  Accordingly, the Court must turn to the Complaint to see if Plaintiff alleged sufficient facts to demonstrate the Supervisor Defendants are not entitled to qualified immunity. Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1319 (11th Cir. 2016).  Courts must utilize a two-part framework to evaluate

the qualified immunity defense.   First, as a threshold inquiry, the Court addresses whether Plaintiff's allegations, if true, establish a constitutional violation.   <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).   If the facts, construed in the light most favorable to the Plaintiff, show a constitutional right has been violated, then the Court asks whether the right violated was "clearly established."   <u>Id.</u>   To protect public officials from meritless claims, the Complaint must contain "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity."   <u>Dalrymple v. Reno</u>, 334 F.3d 991, 996 (11th Cir. 2003) (citation omitted).[3]   Thus, "[i]f a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right."   <u>Williams v. Bd. of Regents of Univ. Sys. of Ga.</u>, 477 F.3d 1282, 1300 (11th Cir. 2007) (citing <u>Williams v. Ala. State Univ.</u>, 102 F.3d 1179, 1182 (11th Cir. 1997) (per curiam)).

---

[3] <u>See also</u> <u>Randall</u>, 610 F.3d at 709-10 ("Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in <u>Iqbal</u>.   A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth - legal conclusions must be supported by factual allegations."); <u>Staco v. Miami-Dade Cnty.</u>, 536 F. Supp. 2d 1301, 1304 (S.D. Fla. 2008) ("[A] claim can be dismissed where a plaintiff pleads facts or makes admissions that demonstrate that a defense is applicable on the face of the pleadings." (citing <u>Marsh v. Butler Cnty.</u>, 268 F.3d 1014, 1022 (11th Cir. 2001))).

As the Court outlined above, Plaintiff failed to allege a violation of a clearly established constitutional right based on either a direct or supervisory liability theory. Due to this, and since there are no allegations the Supervisor Defendants acted outside their discretionary authority at any relevant time, Defendants are entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' renewed motion to dismiss (Doc. 29) is **GRANTED** and this matter is **DISMISSED**. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 27th day of September, 2023.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA